IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHAN LOPEZ,

   Plaintiff,

v.                CIV 17-1030 JHR

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

   Defendant.

## MEMORANDUM OPINION AND ORDER

  This matter comes before the Court on Plaintiff Stephan Lopez' Motion to Reverse or

Remand [Doc. 15], filed March 6, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil

Procedure 73(b), the parties have consented to have me serve as the presiding judge and enter final

judgment. [Doc. 14]. Having reviewed the parties' submissions, the relevant law, and the relevant

portions of the Administrative Record, the Court will deny Mr. Lopez' Motion.

## I.  INTRODUCTION

  This Court's institutional role is to ensure that the Administrative Law Judge's ("ALJ")

decision in a Social Security appeal complied with the relevant legal standards and was supported

by substantial evidence. Mr. Lopez contends that neither standard was met by the ALJ in his case.

In support, he argues that the ALJ failed to include adaptation limitations found by a consultative

examiner in his residual functional capacity ("RFC"), failed to properly weigh the opinions of his

treating nurse practitioner when formulating his RFC, and omitted a severe impairment from his

Step Two analysis. [Doc. 15, p. 3]. Thus, Mr. Lopez asks the Court to reverse the ALJ's finding

of nondisability and remand his case for further proceedings by the Administration. However, for

the following reasons, the Court finds that Mr. Lopez has failed to demonstrate harmful, reversible

error, and so affirms the ALJ's denial of disability insurance benefits and supplemental security income benefits in this case.

## II. PROCEDURAL HISTORY

Mr. Lopez filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on April 4, 2014. *AR* at 198-207.[1] Mr. Lopez alleged a disability onset date of January 1, 2013, *AR* at 249, due to Post Traumatic Stress Disorder (PTSD), Attention Deficit Hyperactivity Disorder (ADHD), Bipolar Disorder, and Hepatitis C. *AR* at 70. The Administration denied Mr. Lopez' claims initially and upon reconsideration, and he requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). *AR* at 70-115, 131.

ALJ James Bentley ("the ALJ") held a hearing on September 8, 2016, at which Mr. Lopez and a Vocational Expert ("VE") testified. *AR* at 37-58. Thereafter, the ALJ issued an unfavorable decision on September 20, 2016. *AR* at 17-36. Mr. Lopez requested review of the ALJ's decision by the Appeals Council; however, on August 25, 2017, the Council denied his request for review. *AR* at 1-5. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step

---

[1] Document 10-1 comprises the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Mr. Lopez has not engaged in substantial gainful activity since his alleged onset date. *AR* at 22. At Step Two, he determined that Mr. Lopez has the following severe impairments: "posttraumatic stress disorder; attention deficit/hyperactivity disorder; bipolar disorder; polysubstance abuse (in remission); [and] personality disorder[.]" *AR* at 22. The ALJ so found after review of Mr. Lopez' medical records from the Bureau of Prisons and recent mental health treatment notes authored by Stuart Cline, LPCC, and Patricia Drey, PMHMP-BC. However, pertinent here, the ALJ found Mr. Lopez' Hepatitis C to be nonsevere. *AR* at 24. At Step Three, the ALJ concluded that Mr. Lopez' impairments do not meet or medically equal the regulatory "listings." *AR* at 24-26.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Lopez retains the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: simple tasks with routine supervision; able to relate to coworkers and supervisors on a superficial work-basis

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

only; but, cannot have work-related contact with the public." *AR* at 26. Employing this RFC at Steps Four and Five, and relying on the testimony of the VE, the ALJ determined that Mr. Lopez retains the residual functional capacity to return to his past relevant work as a kitchen helper, and, furthermore, that there are other jobs that exist in significant numbers in the national economy that he can perform. *AR* at 29-30. Specifically, the ALJ determined that Mr. Lopez retains the capacity to work as a laundry worker, industrial sweeper/cleaner, or hand packager. *AR* at 30. Accordingly, the ALJ determined that Mr. Lopez has not been under a disability as defined by the Social Security Act from his alleged onset date through the date of his decision and denied benefits. *AR* at 31.

## III.    LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Racette v. Berryhill*, 734 F. App'x 592, 595 (10th Cir. 2018) (quoting *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004)). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court reviews the record as a whole, does not reweigh the evidence, and cannot substitute its judgment for that of the agency. *White v. Berryhill*, 704 F. App'x 774, 776 (10th Cir. 2017) (citing *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)). Moreover, "merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting [my] review, [I] should, indeed must, exercise common sense." *Keyes-Zachary*, 695 F.3d at 1166.

## IV.    ANALYSIS

Mr. Lopez argues that the ALJ erred in three ways. [*See* Doc. 15, p. 3]. First, Mr. Lopez argues that the ALJ failed to include all his limitations, as identified by consultative examiner John Owen, Ph.D., in the RFC finding. [*Id.*, pp. 3, 8-9]. Second, Mr. Lopez argues that the ALJ failed to afford proper weight to the opinions of Nurse Practitioner Patricia Drey. [*Id.*, pp. 3, 9-12]. Finally, Mr. Lopez argues that the ALJ improperly relied on the opinions of Jeffrey Glassheim, D.O., in finding that his Hepatitis C is non-severe. [*Id.*, pp. 3, 12-13]. The Court addresses each argument in turn.

### A) The ALJ did not err in affording Dr. Owen's findings only "significant," rather than "great," weight and in rejecting his adaptation limitations.

Dr. Owen examined Mr. Lopez at the Administration's request on June 25, 2014. *See AR* at 356-358. Dr. Owen obtained Mr. Lopez' psychosocial history, which included noting Mr. Lopez' then-present use of both methamphetamine and heroin and his history of incarceration. *AR* at 357. After interviewing Mr. Lopez, Dr. Owen administered a Mini-Mental State Examination, on which Mr. Lopez scored a 27 out of a maximum 30 points, even though he admitted to using heroin the morning of the examination. *AR* at 357. Dr. Owen diagnosed Mr. Lopez with Opioid Use Disorder, ongoing; Methamphetamine Use Disorder, ongoing; Posttraumatic Stress Disorder; Personality Disorder; Cluster A Traits; Attention Deficit with Hyperactivity Disorder, combined type, provisional; and Bipolar Disorder (NOS), provisional. *AR* at 357. Pertinent here, in Dr. Owen's "statement of opinion of abilities," he indicated that Mr. Lopez would have the following limitations:

1. Understand and Remember
   A. Detailed or complex instructions:          moderate difficulty
   B. Very short and simple instructions:          mild difficulty

2. Sustained Concentration and Task Persistence

A. Ability to carry out instructions:       moderate difficulty
B. Ability to attend and concentrate:       moderate difficulty
C. Ability to persist at tasks:       moderate difficulty
D. Ability to work without supervision:       moderate difficulty

3. Social Interactions
   A. Ability to interact with the public:       moderate to marked difficulty
   B. Ability to interact with co-workers:       moderate to marked difficulty
   C. Ability to interact with supervisors:       moderate to marked difficulty

4. Adaptation
   A. Ability to adapt to changes in the workplace:   moderate difficulty
   B. Ability to use public transportation:       moderate difficulty

*AR* at 358. Dr. Owen further opined that Mr. Lopez could manage his own benefits if they were awarded. *AR* at 358.

The ALJ described Dr. Owen's findings and opinion in greater detail than the Court does here. *See* AR at 27-28. Pertinent here, the ALJ summarized Dr. Owen's findings as to Mr. Lopez' overall functioning:

> His functioning was assessed as moderate difficulties in adaptation, moderate difficulties in sustained concentration and task persistence, moderate difficulties in understanding and remembering, and moderate to marked difficulties in social interactions. The undersigned reiterates that the claimant admitted to using heroin the morning of the examination, which could reasonably cause some of the claimant's symptoms.

*AR* at 28.

Later, the ALJ weighed the opinion evidence in the file. *AR* at 29. The ALJ first afforded "great weight" to the assessments of the state agency medical consultant, Julian Lev, and consultative examiner, Jeffrey Glassheim, because they were "consistent with the findings herein and are supported by substantial objective findings." *AR* at 29. The ALJ then afforded Dr. Owen's opinions "significant weight, albeit the claimant used heroin prior to the examination. (Exhibit 3F) Nevertheless, other substantial records around the period of Dr. Owen's examination were essentially consistent with Dr. Owen's findings." *AR* at 29. Finally, the ALJ afforded "diminished

weight" to the "assessments/opinions" of Patty Drey and Stuart Cline, Mr. Lopez' treating nurse practitioner and licensed professional counselor.

Mr. Lopez argues that the ALJ failed to include Dr. Owen's limitations in adaptive functioning into the RFC, resulting in error. [Doc. 15, p. 8]. Mr. Lopez' argument assumes that, because the ALJ afforded Dr. Owen's opinion "significant weight," the ALJ was required to accept and adopt all of the limitations Dr. Owen assessed. [*See* Doc. 15, p. 8 (arguing that "[i]n this case, ALJ Bentley afforded Dr. Owens' (sic) opinions significant weight but provides no explanation for including no adaptive restrictions in the RFC." (citing *Haga v. Astrue*, 482 F.3d 1206, 1208 (10th Cir. 2007))]. Mr. Lopez' argument ignores the fact that the ALJ elevated the opinion of state agency medical consultant, Julian Lev, Ph.D., over Dr. Owen's. *AR* at 29. This renders *Haga*, where the ALJ did not explain why some moderate limitations were accepted and others were rejected in an "*uncontradicted*" medical opinion, inapposite here. *See Haga*, 482 F.3d at 1208 ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability.").

Here, Dr. Owen's opinions as to adaptation were contradicted by Dr. Lev. Dr. Lev, who reviewed Mr. Lopez' case at reconsideration and issued an opinion on September 23, 2014, opined that Mr. Lopez has *no* adaptation limitations, when he is not using drugs. *AR* at 112. While the Court sympathizes with Mr. Lopez that the ALJ's use of the term "significant weight" is confusing, the fact remains that the ALJ gave "great weight" to Dr. Lev's opinion, while only giving "significant weight" to Dr. Owen's in part because Mr. Lopez admitted to using heroin the morning of the examination. *AR* at 29. It is the ALJ's prerogative to resolve evidentiary conflicts in the record, so long as there is substantial evidence to support his conclusion. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)

("We may not "displace the agency's choice between two fairly conflicting views[.]") (citation omitted). Here, the ALJ permissibly elevated Dr. Lev's opinion over Dr. Owen's.

"Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence … as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a, 416.913a. Under 20 C.F.R. §§ 404.1527(c) and 416.927(c), an ALJ must consider the following factors in deciding the weight to give a medical opinion: (1) the examining relationship; (2) the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization in the area opined to; and (6) "any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Here, the ALJ gave "great weight" to Dr. Lev's opinion because it was "supported by substantial objective findings." *AR* at 29. Pertinent here, Dr. Lev's findings were based on his review of Mr. Lopez' medical records, including Dr. Owen's opinions. *See AR* at 110. Mr. Lopez has not argued, nor could he, that it was inappropriate for the ALJ to rely on Dr. Lev's opinion. *See, e.g.*, *Tarpley v. Colvin*, 601 Fed. Appx. 641, 644 (10th Cir. 2015) (finding that an ALJ did not err in affording significant weight to a state agency physician where the opinion was "well supported by the evidence of record.").

"[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Moreover, "[t]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Id.* (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). Here, the ALJ determined Mr. Lopez' RFC after reviewing the

record and weighing the various opinions in the file. The ALJ was not required to adopt Dr. Owen's adaptation limitations, especially where he elevated Dr. Lev's opinions over Dr. Owen's. *See Carr v. Commissioner,* SSA, 734 F. App'x 606, 610 (10th Cir. 2018) ("It is not our role to reweigh this evidence and the ALJ was entitled to rely on it to discount Ms. Lee's more restrictive statements."). Therefore, the Court discerns no reversible error in the ALJ's omission of adaptation limitations, found by Dr. Owen but not Dr. Lev, from the RFC.

Even if the Court were to assume the ALJ erred, Mr. Lopez has failed to demonstrate prejudice resulting from the ALJ's omission of adaptation limitations from the RFC. Mr. Lopez argues that "[t]he prejudice is clear" in his case. [Doc. 15, p. 9]. However, the Court cannot deduce the prejudice resulting from the ALJ's omission of the adaptation limitations here, and Mr. Lopez has not explained why adding the limitations to his RFC would change the result in this case. "Adaptive functions reflect the individual's ability to integrate other areas of functioning." POMS DI 24510.061. Thus, "[t]he items in this section pertain to the individual's ability to: plan, respond to changes, deal appropriately with mental demands (stress), avoid hazards and maintain safe behavior, follow rules, adhere to schedules and to time constraints, and travel." POMS DI 24510.061(B)(4)(A).

The two limitations at issue are the ability to adapt to changes in the workplace and the ability to use public transportation. *AR* at 358. The latter restriction is belied by the record, which indicates that Mr. Lopez "can drive when necessary." *AR* at 25 (citing Exhibit 4E), *see AR* at 237. And, as to the former, the ALJ cited letters from Mr. Lopez' junior college professors indicating that he had been invited to join the honors program despite his alleged impairments, "attended class every day, did all his quizzes and written assignments on time, and was getting good grades." *AR* at 28. In light of this evidence, which the ALJ explicitly considered when formulating Mr.

Lopez' RFC, *AR* at 28-29, the Court cannot fault the ALJ for omitting adaptive limitations from Mr. Lopez' RFC.

**B) The ALJ was not required to weigh Nurse Practitioner Drey's "assessments/opinions," rendering the ALJ's legal error harmless.**

As noted above, the ALJ afforded "diminished weight" to the "assessments/opinions" from Patricia Drey, PMHNP-BC. *AR* at 29. He did so because "[a]ccording to Social Security Ruling 06-3p, nurse practitioners … are considered to be 'other sources;' and opinions from these 'other sources' must also be evaluated; however, only 'acceptable medical sources' can supply medical opinions." *AR* at 29. The Commissioner agrees that "this was not a good reason in and of itself to discount Ms. Drey's letter," but argues that Mr. Lopez "has not and cannot point to any harm in the ALJ's treatment of Ms. Drey's letter." [Doc. 17, p. 13]. Given this concession, the Court will assume that the ALJ's logic in affording diminished weight to Ms. Drey's opinions was error. *See Harrold v. Berryhill*, 714 F. App'x 861, 869 (10th Cir. 2017) (Explaining that even "other source" opinions must be evaluated and weighed according to the regulatory factors, especially as to key issues such as impairment severity and functional effects.). However, the question is whether the error harmed Mr. Lopez.

Ms. Drey, who treated Mr. Lopez roughly seven times over the course of 2015-2016, authored a letter on Mr. Lopez' behalf on August 5, 2016. *AR* at 448-535. Her letter states as follows:

> Stephan Lopez has been a client of mine since June of 2015. He has diagnoses of post-traumatic stress disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder. He has been approved by the Department of Health for the medical cannabis program for treatment of his post-traumatic stress disorder; he received his initial license in 2015, and is currently awaiting the state to issue his renewal license. Stephan has been treated with Adderall for his ADHD since our initial meeting in June of 2015. He has been compliant with his treatment and therapy; he has made a genuine effort to recover.

*AR* at 530. The Commissioner argues that Ms. Drey's letter, like her medical records, "merely listed [Mr. Lopez'] diagnoses and course of treatment," did not indicate that Mr. Lopez was more limited than the ALJ's RFC, and was, therefore, "not a true medical opinion that the ALJ was required to weigh." [Doc. 17, p. 13]. Mr. Lopez contends that this argument is "meritless on its face." [Doc. 18, p. 5]. However, the Court disagrees.

"Medical opinion" is a term of art. It does not encompass all parts of a medical record, but merely that which concerns a patient's "symptoms, diagnosis and prognosis, what []he can still do despite the impairment(s), or [his] physical and mental restrictions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (quoting SSR 06–03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)). As such, records which document a claimant's complaints and chronicle his treatment, but do not contain opinions concerning the claimant's abilities or limitations, do not have to be weighed. *See Moua v. Colvin*, 541 F. App'x 794, 797 (10th Cir. 2013) (citing 20 C.F.R. § 404.1527(a)(2) to define medical opinions as "judgments about the nature and severity of a claimant's impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions."); *see also Welch v. Colvin*, 566 F. App'x 691, 693-4 (10th Cir. 2014) ("[A]s the Commissioner points out, none of the physicians Ms. Welch identifies provided medical opinions about her that, given her impairments, the ALJ was required to weigh. Rather, each physician simply diagnosed her impairments and in some cases recommended treatment for them."); *Duncan v. Colvin*, 608 F. App'x 566, 574 (10th Cir. 2015) ("Given that the ALJ did not reject the medical impairments found by Dr. DePaula and there were no medical opinions regarding Ms. Duncan's work-related functional limitations, there was no opinion on such matters by Dr. DePaula for the ALJ to weigh.").

Mr. Lopez argues that "Ms. Drey made several opinions that were completely ignored by the ALJ including that [he] is compliant with treatment, makes genuine efforts to recover, and suffers from debilitating PTSD." However, these "opinions" are not "medical opinions," that the ALJ was required to weigh, for the reasons already discussed. Moreover, to the extent that Ms. Drey offered an opinion that Mr. Lopez' PTSD is "debilitating,"[3] the same is not a true "medical opinion" because it touches upon the ultimate issue of disability, which is a matter reserved to the Commissioner. *See Davison v. Colvin*, 596 F. App'x 675, 681 (10th Cir. 2014) ("Such opinions, even when offered by a treating source, are never entitled to controlling weight or given special significance."). As such, while the Court agrees with Mr. Lopez that the ALJ should have been more careful with his treatment of Ms. Drey's "assessments/opinions," he has failed to demonstrate any harmful, reversible, error.

**C) The ALJ's failure to designate Mr. Lopez' Hepatitis C as a severe impairment at Step Two was harmless.**

Mr. Lopez' last argument is that "ALJ Bently improperly relied on Dr. Glassheim's examination in concluding that Hepatitis C was non-severe." [Doc. 15, p. 12]. The Court finds Mr. Lopez' argument to be without merit, for two reasons.

First, the premise of Mr. Lopez' argument, that the ALJ relied solely on Dr. Glassheim's opinion when determining that his Hepatitis C was non-severe, is rejected. [*See* Doc. 18, p. 4]. The ALJ not only discussed Dr. Glassheim's examination when making this finding, but also Mr. Lopez' treatment records, including as recent as February 29, 2016. *AR* at 24.

Second, even if the Court were to find merit in Mr. Lopez' position, any error by the ALJ in failing to recognize Mr. Lopez' Hepatitis C as a severe impairment at Step Two is ultimately

---

[3] Ms. Drey does not use this term in her letter. Rather, Mr. Lopez argues that she implies it because "[a] clinician can certify or recertify a patient for medical marijuana only if the condition is debilitating." [Doc. 15, p. 11, n.5 (citing NMAC 7.34.8)].

harmless because the ALJ reached the proper conclusion that Mr. Lopez could not be denied benefits conclusively at Step Two and proceeded to the next step of the sequential evaluation process. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."). In this case, the ALJ determined that Mr. Lopez has several severe mental impairments. *AR* at 24. The ALJ then proceeded to analyze Mr. Lopez' claims under Steps Three through Five. As such, any error by the ALJ in failing to find Mr. Lopez' Hepatitis C to be a severe impairment at Step Two is harmless under Tenth Circuit case law, and the Court will not reverse on this basis.

V.     **CONCLUSION**

There is no question that Mr. Lopez suffers from several severe mental impairments. However, "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016). Here, Mr. Lopez has failed to demonstrate that his impairments preclude him from performing work within the RFC identified by the ALJ, and has not convinced the Court that the ALJ erred in formulating his RFC. As such, Mr. Lopez has failed to demonstrate that the ALJ committed reversible error in this case.

Wherefore,

**IT IS HEREBY ORDERED** that Mr. Lopez' Motion to Reverse or Remand [Doc. 15] is **denied**.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent